**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SCOTT PETERS,<br><br>     **Plaintiff,**<br><br>v.<br><br>J.B. PRITZKER, LATOYA HUGHES, ANTHONY WILLS, FRANK LAWRENCE, JOLENE KUHNERT, D. EILAND, DENTIST WYSHNYTZKY, DENTIST MILLER, DENTAL DIRECTOR NORTEN, DENTIST KARANBIR SANDHU, JENNIFER BARKER, H. PURDY, JOHN DOE #1 OFFICER, SERGEANT BRUNLEE, LIEUTENANT CALEWINE, MENTAL HEALTH COUNSELOR CARRIAGE, and WEXFORD HEALTH SOURCES, INC.,<br><br>     **Defendants.** | Case No. 25-cv-1759-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Scott Peters, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. Peters's Amended Complaint was dismissed without prejudice, but he was granted leave to file a Second Amended Complaint (Doc. 22). Peters's Second Amended Complaint (Doc. 23) alleges deliberate indifference to his dental and physical

1

conditions as well as violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e.

After filing his Second Amended Complaint, Peters filed a Motion to Strike (Doc. 26) and Objection (Doc. 27). Peters alleges that he intended for the documents filed as exhibits to his Second Amended Complaint (Docs. 23-1, 23-2) to be filed as exhibits to his Objection (Doc. 24). He believes the mistake was committed on purpose to make it appear that he failed to comply with the Court's orders (Doc. 26, p. 1). He asks for a hearing to investigate the filings (Doc. 27). There is simply no evidence to suggest that the mistake in filing was malicious. Mistakes in filing sometimes occur when multiple documents are received for filing. The Clerk is **DIRECTED** to **STRIKE** Peters's exhibits (Docs. 23-1, 23-2) and **FILE** them as exhibits to his Objection (Doc. 24). The Court will only consider the Second Amended Complaint (Doc. 23).

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Second Amended Complaint

On May 23, 2023, Peters submitted a request for dental services but failed to receive a response (Doc. 23, p. 9). On June 2, 2023, he submitted a grievance complaining of his inability to obtain dental care for his dental pain (*Id.*). Peters alleges that he suffered

pain and swelling, as well as difficulty eating and sleeping as the result of his dental issues (*Id.*). He later learned from the dentists that he suffered from three decayed and fractured teeth as well as a partially removed tooth. The teeth were filled with cavities and needed removal (*Id.*). But the defendant dentists refused to timely extract the teeth.

On June 9, 2023, Dentist D. Eiland examined Peters's teeth. Eiland prescribed antibiotics but informed Peters that his name would be put on a list for extraction (Doc. 23, p. 9). Peters name was never called, and he eventually ran out of the antibiotic, prompting him to submit additional requests for care (*Id.*). On August 14, 2023, he filed another grievance.

Peters received a memorandum from Eiland indicating that the prison only had one dentist who performed examinations on Tuesdays and Wednesdays (Doc. 23, p. 10). On September 12, 2023, Peters was placed on another extraction list for Dentists Wyshnytzky and Miller (*Id.*). Peters alleges that those lists were actually for dental exams, and the dentists refused to extract the teeth (*Id.*). He believes this was due to a Wexford policy of inaction to delay care. On September 30, 2023, Peters wrote another grievance and was again informed that he would be placed on the extraction list (*Id.*). He asked to go to an outside dentist, but his request was refused.

On October 21, 2023, Peters was scheduled for an extraction with Dentist Sandhu (Doc. 23, p. 10). Sandhu indicated that he would only extract two of the teeth at the appointment (*Id.*). But when Sandhu placed the needle to the root, Peters suffered an adverse reaction (*Id.*). Peters spit in a non-working dental sink, and Dental Assistant Barker complained about his actions (*Id.*). Peters stated he was going to write a grievance

and file a lawsuit for their actions because he believed that the incident was done on purpose (*Id*.).

Peters alleges that in retaliation for his threats to file a lawsuit and grievances, Barker fabricated a sexual misconduct disciplinary ticket against Peters (Doc. 23, p. 10). He was charged with misconduct after the appointment had already ended (*Id*.). Peters contends Sandhu's memo from the appointment makes no mention of sexual misconduct (*Id*. at p. 11).

Peters was taken to a holding cell, received a disciplinary ticket, and was then escorted to North 2 segregation (Doc. 23, p. 11). Peters points out that IDOC Director Latoya Hughes, Warden Anthony Wills, and ADA Coordinators J. Kuhnert and Frank Lawrence know that North 2 is not ADA compliant because of previous litigation involving North 2 (*Id*.). He alleges the officials are aware of these systemic issues with the building. Peters is a qualified disabled individual. He was met at receiving by Lieutenant Calewine, Sergeant Brunlee, and Mental Health Counselor Carriage (*Id*.). They placed Peters on 1 Gallery, Cell 27 but Peters complained that the cell was not ADA compliant (*Id*.). Peters informed the officers that he could not be placed in the cell and then he requested medical care for both his dental condition and because he was scheduled for spinal surgery (*Id*.). The officers refused (*Id*.). They picked Peters up and pushed him to the floor of the cell, leaving him in the non-compliant cell (*Id*.). Later in his pleading, Peters alleges that John Doe Officer also participated in placing him in the non-compliant cell (*Id*. at p. 14).

4

A few days later, Peters was transported to the hospital for his spinal surgery (Doc. 23, p. 12). He begged doctors there to remove his fractured teeth, but they refused. He even tried to remove the teeth himself after surgery. On October 31, 2023, Peters returned to Menard. He met with Dentist Norten about his teeth, but Norten again refused to remove the teeth and informed Peters that he was still on the extraction list (*Id.*). Peters alleges that his teeth were not extracted until he transferred to Lawrence Correctional Center in 2024 (*Id*. at p. 14).

Peters alleges that Governor J.B. Pritzker was involved in the enforcement of the medical and dental programs at Menard (Doc. 23, p. 13). He alleges Dentist Eiland informed him that the prison had a problem hiring enough staff to care for the inmates and that dentists were only available two days a week (*Id.*). Peters alleges Latoya Hughes was aware of the dental issues at the prison due to prior litigation (*Id.*).

Peters further alleges that Lieutenant Purdy collaborated with Baker to fabricate the sexual misconduct ticket (Doc. 23, p. 13). Peters alleges that Purdy walked by the holding cell after the dental appointment and told Peters to be quiet. He also denied him water and threatened to send him to segregation (*Id.*). Peters learned from another inmate that Purdy has a history of assisting prison officials in writing false sexual misconduct tickets and retaliating against inmates who write tickets (*Id.*).

### Preliminary Dismissals

Peters attempts to sue a number of high-ranking officials, arguing that they were aware that the segregation unit at Menard was not ADA compliant. He alleges that these officials include Latoya Hughes, Anthony Wills, Frank Lawrence, and J. Kuhnert. He also

alleges that J.B. Pritzker is liable for the delays he experienced in obtaining dental care because the dentist even mentioned that it was difficult to hire enough staff for the prison. But these officials cannot be liable simply because they hold high-ranking positions and should have known about issues at Menard. *See e.g., Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[p]ublic officials do not have a free-floating obligation to put things to rights," and officials such as the head of the department of corrections are entitled to relegate to prison staff the provision of adequate conditions of confinement and medical care); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). There are simply no allegations to suggest that governor, warden, IDOC director, or ADA coordinators were aware of Peters's specific conditions or his placement in a non-compliant cell. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known"). Thus, any potential claim against Latoya Hughes, Anthony Wills, Frank Lawrence, J. Kuhnert, and J.B. Pritzker is **DISMISSED without prejudice**.

Peters also fails to state a claim against Wexford Health Sources, Inc. He merely alleges in conclusory fashion that Wexford had a policy that delayed dental care, but without more, Peters fails to state a claim. He fails to identify an express policy of Wexford's, nor has he pointed to a widespread practice of delaying dental care. Thus, any claim against Wexford is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Second Amended Complaint, the Court designates the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against D. Eiland, Dentist Miller, Dentist Norten, Dentist Wyshnytzky, and Dentist Sandhu for delaying the extraction of Peters's teeth.**

> **Count 2:** **First Amendment retaliation claim against Jennifer Barker and Lieutenant Purdy for writing a false disciplinary ticket against Peters for sexual misconduct in retaliation for Peters complaining about his dental care.**

> **Count 3:** **Eighth Amendment deliberate indifference to medical needs claim against Sergeant Brunlee, Lieutenant Calewine, John Doe #1, and Mental Health Counselor Carriage for denying Peters medical/dental care and placing him in a non-compliant cell.**

> **Count 4:** **ADA and/or RA claim against staff for placing Peters in a non-compliant cell in North 2 segregation.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

At this stage, Peters states a viable claim in Count 1 against the dentists who delayed the extraction of his fractured teeth. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment).

Peters also states a viable retaliation claim against Jennifer Barker in Count 2. He alleges that he threatened to file grievances and lawsuits against her and, in response, she wrote him a disciplinary ticket. Peters also alleges that Lieutenant Purdy "acted in concert" with Barker because he walked by his cell, told him to shut up, and said he'd send him to segregation. But there are no allegations to indicate that he was personally involved in issuing the disciplinary ticket or aware of Peters's grievances and threats of a lawsuit. Peters merely alleges that he thinks Purdy was involved because another inmate said he filed disciplinary tickets in the past. There are simply no allegations to suggest Purdy's involvement in the issuance of the disciplinary ticket. Thus, any claim against Purdy is **DISMISSED without prejudice**.

Peters also states a viable claim in Count 3 against Sergeant Brunlee, Lieutenant Calewine, John Doe #1, and Mental Health Counselor Carriage. He alleges that these officials placed him in the North 2 cell despite knowing that he was disabled and the cell was non-compliant with the ADA. He also alleges that he asked them for medical and dental care, but they denied his request for care.

Peters also states a viable claim in Count 4 under the ADA and RA. The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA and RA. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department

8

or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity only, as the proper defendant for Peters's ADA and/or RA claim.

### Pending Motions

Along with his Second Amended Complaint, Peters filed an Objection (Doc. 24) to the Court's dismissal of his Amended Complaint (Doc. 22). Although Federal Rule of Civil Procedure 72 allows for the filing of objections to a Magistrate Judge's Report and Recommendations, there is no basis for the filing of an objection to a district court's order. Peters could have filed a motion to reconsider either under Federal Rule of Civil Procedure 59(e) or 60(b) and did so with respect to the denial of his motion for preliminary injunction (Doc. 10). But such motions are for errors of fact or law, or to present newly discovered evidence. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)); *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Peters merely argues that the Court showed favoritism in reviewing his pleading and improperly relied on Federal Rule of Civil Procedure 8 requiring a short and plain statement, but one that has enough facts to state a plausible claim. But as the Court previously pointed out in dismissing Peters's Amended Complaint, his pleading was lengthy and appeared to improperly join numerous, unrelated claims. Thus, it was properly dismissed. Peters has now filed a pleading that corrects the issues in his

9

previous pleading. To the extent he seeks reconsideration of his earlier pleading, his Objection is **DENIED**.

Peters also filed a Motion in Request of Missing Documents (Doc. 28). He states that he does not know what Doc. 25 is on the docket as the law librarian indicated she did not have access to the document. The document Peters references is a motion for recruitment of counsel (Doc. 25) filed by Peters. To aid Peters in reviewing recent filings in this case, the Clerk of Court is **DIRECTED** to send Peters a copy of the docket sheet.

### Motion for Counsel

Peters also filed a motion for recruitment of counsel (Doc. 25). Peters alleges that the legal issues in this case are complex and he will need counsel in order to gain meaningful access to the courts. But given the early stages of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 846 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] There is nothing currently pending that would require counsel. Once Defendants have filed an Answer, the Court will enter a scheduling order explaining the next steps in the litigation process. If Peters has difficulties in litigating his case at that time, he may resubmit his request for counsel. At this time, counsel is not needed, and his motion is **DENIED**.

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

## Disposition

For the reasons stated above, Count 1 shall proceed against D. Eiland, Dentist Miller, Dentist Norten, Dentist Wyshnytzky, and Dentist Sandhu. Count 2 shall proceed against Jennifer Barker. Count 3 shall proceed against Sergeant Brunlee, Lieutenant Calewine, John Doe #1, and Mental Health Counselor Carriage. Count 4 shall proceed against Latoya Hughes (in her official capacity only). Latoya Hughes will also remain in the case to respond to discovery aimed at identifying John Doe #1.

The Clerk of Court shall prepare for D. Eiland, Dentist Miller, Dentist Norten, Dentist Wyshnytzky, Dentist Sandhu, Jennifer Barker, Sergeant Brunlee, Lieutenant Calewine, Counselor Carriage, and Latoya Hughes (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Peters. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Peters, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

11

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Peter's claims involve his medical and dental care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Peters, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Peters is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 6, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

12

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**